UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| McLaughlin Gormley King Company, | ) | |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | **(Jury Trial Demanded)** |
| vs. | ) | |
| | ) | |
| Wilbur-Ellis Company, | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW McLaughlin Gormley King Company ("Plaintiff") as and for its

Complaint against Wilbur-Ellis Company ("Defendant") states and alleges as follows:

## PARTIES

1.     Plaintiff is a Minnesota corporation having a principal place of business at

8810 Tenth Avenue North, Minneapolis, MN 55427-4372.

2.     Defendant is a California corporation having a principal place of business

at 345 California St., 27th Floor, San Francisco, CA 94104.  Defendant is also registered

as a Foreign Corporation in Minnesota with CT Corporation System Inc. serving as its

Minnesota agent with a registered office at 100 S. 5th Street, Suite 1075, Minneapolis,

MN 55402.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over the claims asserted in this

action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338, and 1367.  The

claims alleged in this Complaint arise under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, MINN. STAT § 325D.44, *et seq.*, MINN. STAT § 333.285, and Minnesota Common Law.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the parties reside within this district and division.

## FACTS

**I.    PROCEEDING BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

5.      On December 2, 2009, Plaintiff filed a Notice of Opposition with the Trademark Trial and Appeal Board in the United States Patent and Trademark Office (the "TTAB"), which was assigned Opposition No. 91192866, opposing registration of Defendant's then-pending intent-to-use trademark application for the mark PROGANIC in connection with "pesticides" based on priority and a likelihood of confusion with Plaintiff's various, federally-registered PYGANIC® marks (the "Opposition Proceeding").

6.      On October 25, 2010, Defendant filed a Notice of Withdrawal of Application with the TTAB formally withdrawing and abandoning its application to register the PROGANIC mark in connection with pesticides.  And on October 29, 2010, the TTAB entered judgment against Defendant and the trademark application for the PROGANIC mark in connection with pesticides was refused registration with prejudice. Attached as Exhibit A is a true and correct copy of the Order from the Trademark Trial and Appeal Board dated October 29, 2010.

## II.   DEFENDANT'S BAD FAITH ADOPTION OF THE PROGANIC MARK.

7.     Defendant knew about Plaintiff's PYGANIC® mark prior to adopting its PROGANIC mark through a trademark search and because Defendant is the California distributor of Plaintiff's PYGANIC® insecticide.

8.     Defendant conducted a trademark search before adopting its PROGANIC mark, and Plaintiff's PYGANIC® marks were included in the search results.

9.     In an e-mail dated April 13, 2009 from Randy Troxel to Jon Leman summarizing the trademark search results, Defendant's counsel "[e]stimated [the] probability of successful registration in the US [to be] >50%" but also identified a few potential issues. Mr. Troxel described one of those issues as follows:

> Prior federal registrations (potential for 'likelihood of confusion' issue raised by a Trademark Examiner; possible grounds for opposition by owner): <u>PYGANIC PRO</u> (and 10 variations; for insecticides), owned by [Plaintiff], Minnesota; recommended review of business contacts/relationship); [estimated probability] of successfully overcoming such objections >50%.
> ***
> If the [Plaintiff] issues is [sic] not a problem for you, I recommend we file for pesticides asap.

10.    The e-mail communication further states that Defendant's PROGANIC mark was "available for [Defendant's] limited use" and that it was possible that Plaintiff "could conceivably object to [Defendant's] application to register the [PROGANIC] mark on grounds of 'likelihood of confusion' among consumers."

11.    The e-mail communication for the PROGANIC mark in connection with pesticides contains only conclusory statements and addresses only one *DuPont* factor; namely, the similarity of the marks.

12.    The original product sheet for Defendant's PROGANIC pesticide read "Micronized Sulfur Insecticide and Fungicide," but was subsequently changed by deleting the term "insecticide" only after Plaintiff commenced the Opposition Proceeding.  As of October 2010, a second product sheet for Defendant's PROGANIC pesticide still read "PROGANIC MICRONIZED SULFUR (Fungicide and Insecticide)."

13.    Jon Leman, Defendant's Marketing and Sales Manager, represented that he intended to use the PROGANIC mark "as a brand name for a line of organic pesticides."

14.    Defendant knew about Plaintiff's rights in its PYGANIC® marks prior to its adoption of the PROGANIC mark.  In addition, Defendant was advised by its attorney at the trademark clearance stage to identify some business relationships with Plaintiff to use as leverage in the event an opposition occurs and was told that Defendant had only better than a 50% chance of overcoming an objection based on Plaintiff's PYGANIC® marks. With complete disregard of Plaintiff's trademarks rights, Defendant adopted the PROGANIC mark for pesticides, knowing there was as much as a 49.9% chance of there being a likelihood of confusion.  The circumstances surrounding Defendant's adoption and use of the PROGANIC are exceptional.

**III.  LIKELIHOOD OF CONFUSION AND PRIORITY**

15.    The terms PROGANIC and PYGANIC begin with the letter "P."

16.    PROGANIC and PYGANIC contain the string –GANIC.

- 4 -

17.   PROGANIC and PYGANIC consist of three syllables.

18.   PYGANIC consists of seven letters.

19.   PROGANIC consists of eight letters.

20.   The only visual difference between PROGANIC and PYGANIC is the use of the letters "RO" in place of the letter "Y."

21.   The PROGANIC and PYGANC® marks are similar in sight, sound, and meaning.

22.   Plaintiff adopted and has continuously used its PYGANIC® marks in connection with pesticides and insecticides since at least as early as March, 2001.

23.   Plaintiff is the record owner of U.S. Trademark Registration No. 2,572,106 for the trademark PYGANIC® (in standard characters) for use in connection with "Insecticides for agricultural, industrial, institutional, commercial, residential, household, and veterinary use" in International Class 5, claiming a first use date at least as early as March 1, 2001. The Registration was issued on the Principal Register on May 21, 2002 and is incontestable. The filing date and nationwide constructive use date of the Registration is June 29, 2000.

24.   Plaintiff is the record owner of U.S. Trademark Registration No. 2,604,860 for the trademark **PyGanic** ® for use in connection with "Insecticides for agricultural, industrial, institutional, commercial, residential, household, and veterinary use" in International Class 5, claiming a first use date at least as early as March 1, 2001. The Registration was issued on the Principal Register on August 6, 2002

- 5 -

and is incontestable.   The filing date and nationwide constructive use date of the Registration is December 18, 2001.

25.     Plaintiff is the record owner of U.S. Trademark Registration No. 2,609,844

for the trademark **PyGanic** ® for use in connection with "Insecticides for agricultural, industrial, institutional, commercial, residential, household, and veterinary use" in International Class 5, claiming a first use date at least as early as March 1, 2001. The Registration was issued on the Principal Register on August 20, 2002 and is incontestable.   The filing date and nationwide constructive use date of the Registration is December 18, 2001.

26.     Plaintiff is the record owner of U.S. Trademark Registration No. 2,677,239



for the trademark ® for use in connection with "Insecticides for agricultural, industrial, institutional, commercial, residential, household, and veterinary use" in International Class 5, claiming a first use date at least as early as March 1, 2001.   The Registration was issued on the Principal Register on January 21, 2003 and is incontestable.   The filing date and nationwide constructive use date of the Registration is December 18, 2001.

27.     Plaintiff is the record owner of U.S. Trademark Registration No. 2,962,464 for the trademark PYGANIC PRO® (in standard characters) for use in connection with "Insecticides for agricultural, industrial, institutional, commercial, residential, household, veterinary, turf, lawn, and landscape use" in International Class 5, claiming a first use date at least as early as June 18, 2004.  The Registration was issued on the Principal Register on June 14, 2005.  The filing date and nationwide constructive use date of the Registration is February 18, 2004.

28.     Plaintiff is the record owner of U.S. Trademark Registration No. 3,128,000

for the trademark ® for use in connection with "Insecticides" in International Class 5, claiming a first use date at least as early as November, 2005.  The Registration was issued on the Principal Register on August 8, 2006.  The filing date and nationwide constructive use of the Registration is December 15, 2004.

29.     Plaintiff is the record owner of U.S. Trademark Registration No. 3,137,021

**PyGanic PRO**

for the trademark                    ® for use in connection with "Insecticides" in International Class 5, claiming a first use date at least as early as November, 2005.  The Registration was issued on the Principal Register on August 29, 2006.  The filing date and nationwide constructive use date of the Registration is December 14, 2004.

30.     Plaintiff is the record owner of U.S. Trademark Registration No. 3,252,314

for the trademark ® for use in connection with "Insecticides" in

International Class 5, claiming a first use date at least as early as November 2, 2005. The

Registration was issued on the Principal Register on June 12, 2007. The filing date and

nationwide constructive use date of the Registration is December 14, 2004.

31.     Plaintiff is the record owner of U.S. Trademark Registration No. 3,252,313

for the trademark ® for use in connection with "insecticides" in

International Class 5, claiming a first use date at least as early as November 2, 2005. The

Registration was issued on the Principal Register on June 12, 2007. The filing date and

nationwide constructive use date of the Registration is December 14, 2004.

32.     Plaintiff is the record owner of U.S. Trademark Registration No. 3,798,794

for the trademark  ® for use in connection with

"insecticides" in International Class 5, claiming a first use date at least as early as July 1,

2009. The Registration was issued on the Principal Register on June 8, 2010. The filing

date and nationwide constructive use date of the Registration is September 10, 2009.

33.     Plaintiff is the record owner of U.S. Trademark Registration No. 3,802,298

for the trademark PYGANIC DUST® (in standard characters) for use in connection with

"insecticides" in International Class 5, claiming a first use date at least as early as July 1, 2009. The Registration was issued on the Principal Register on June 15, 2010. The filing date and nationwide constructive use date of the Registration is August 25, 2009.

34.   Plaintiff is the record owner of U.S. Trademark Registration No. 3,806,044 for the trademark  ® for use in connection with "insecticides" in International Class 5, claiming a first use date at least as early as July 1, 2009. The Registration was issued on the Principal Register on June 22, 2010. The filing date and nationwide constructive use date of the Registration is September 10, 2009.

35.   Defendant claims it first used the PROGANIC mark in connection with fertilizers in April 2004.

36.   Defendant's first use of the PROGANIC mark in connection with its sun shade product occurred sometime after April 2004.

37.   Defendant's first use of the PROGANIC mark in connection with its insecticide and fungicide product occurred after Plaintiff had formally objected to and opposed Defendant's intent-to-use PROGANIC application for such goods.

38.   Plaintiff has priority to use its PYGANIC® mark.

39.   Plaintiff is a leading developer and marketer of insecticides and other pest control products in the United States.

40.   Insecticides and fungicides are types of pesticides.

41.   Insecticides and fungicides are related goods.

42.    In the trademark clearance e-mail correspondence for the PROGANIC mark in connection with pesticides, Defendant's authorized agent and lawyer Randy Troxel said that the prior user of the PRO-GANIC mark in New York for fertilizer mixing services "could potentially exclude [Defendant's] use [of the PROGANIC mark for pesticides] in [New York]."

43.    Insecticides can be mixed with fertilizer.

44.    Insecticides and fertilizer are related goods.

45.    The PROGANIC fertilizer, sun shade product, and insecticide and fungicide are marketed in the Agriculture market.

## COUNT I
### (Trademark Infringement of a Registered Mark)
### (Lanham Act § 32, 15 U.S.C. § 1114)

46.    Plaintiff restates and incorporates by reference the allegations in Paragraphs 1-44.

47.    Defendant's unauthorized use of the PROGANIC mark in connection with fertilizer, a sun shade product, and insecticide/fungicide is likely to cause confusion, cause mistake, and deceive as to the affiliation, connection, or association of Defendant with Plaintiff as to the origin, sponsorship, or approval of Defendant's goods by Plaintiff. This use of PROGANIC constitutes trademark infringement under 15 U.S.C. § 1114.

48.    Defendant's unlawful actions have caused, and will continue to cause, Plaintiff irreparable harm unless enjoined.

49.    Defendant has profited from its unlawful actions and has been unjustly enriched to the detriment of Plaintiff.  Defendant's unlawful actions have caused Plaintiff

monetary damage in an amount presently unknown, but in an amount to be determined at trial.

## COUNT II
### (Federal Unfair Competition)
### (Lanham Act § 43(a), 15 U.S.C. § 1125(a))

50.     Plaintiff restates and incorporates by reference the allegations in Paragraphs 1-49.

51.     Defendant's unauthorized use of PROGANIC in connection with fertilizer, a sun shade product, and insecticide/fungicide is a false designation of origin, false or misleading description of fact, and a false or misleading representation of fact.

52.     Defendant's unauthorized use of PROGANIC in connection with fertilizer, a sun shade product, and insecticide/fungicide is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods or commercial activities by Plaintiff.

53.     Defendant's unlawful actions have caused, and will continue to cause, Plaintiff irreparable harm unless enjoined.

54.     Defendant has profited from its unlawful actions and has been unjustly enriched to the detriment of Plaintiff.  Defendant's unlawful actions have caused Plaintiff monetary damage in an amount presently unknown, but in an amount to be determined at trial.

## COUNT III
**(Minnesota Deceptive Trade Practices Act)**
**(MINN. STAT. § 325D.44, *et seq.*)**

55.     Plaintiff restates and incorporates by reference the allegations in Paragraphs 1-54.

56.     Defendant's unauthorized use of the PROGANIC mark in connection with fertilizer, a sun shade product, and insecticide/fungicide constitutes unfair and deceptive trade practices under the Deceptive Trade Practices Act of the State of Minnesota.

57.     Defendant's unlawful actions have caused, and will continue to cause, Plaintiff irreparable harm unless enjoined.

58.     Defendant has profited from its unlawful actions and has been unjustly enriched to the detriment of Plaintiff.  Defendant's unlawful actions have caused Plaintiff monetary damage in an amount presently unknown, but in an amount to be determined at trial.

## COUNT IV
**(Common Law Unfair Competition)**

59.     Plaintiff restates and incorporates by reference the allegations in Paragraphs 1-58.

60.     Defendant's unauthorized use of the PROGANIC mark in connection with fertilizer, a sun shade product, and insecticide/fungicide constitutes unfair competition under the common law.

61.     Defendant's unlawful actions have caused, and will continue to cause, Plaintiff irreparable harm unless enjoined.

62.    Defendant has profited from its unlawful actions and has been unjustly enriched to the detriment of Plaintiff. Defendant's unlawful actions have caused Plaintiff monetary damage in an amount presently unknown, but in an amount to be determined at trial.

## CONCLUSION

**WHEREFORE**, Plaintiff prays that the Court enter judgment:

1.    In favor of Plaintiff and against Defendant on all of Plaintiff's claims;

2.    Enjoining and restraining Defendant, its officers, agents, servants, employees, attorneys and all others in active concert or participation with Defendant, during the pendency of this action and thereafter permanently from:

A.    Doing business under the name PROGANIC or any other confusingly similar name;

B.    Using the mark PROGANIC or any confusingly similar designation alone or in combination with other words or designs, as a trademark, domain name, domain name component, trade name, trade name component or otherwise, to market, advertise, or identify products and services not produced or authorized by Plaintiff;

C.    Unfairly competing with Plaintiff in any manner whatsoever;

D.    Causing likelihood of confusion, injury to business reputation, or dilution of the distinctiveness of Plaintiff's marks, symbols, labels, or forms of advertisement;

E.     Causing likelihood of confusion or injury to business reputation of Plaintiff's PYGANIC® mark, symbols, labels, or forms of advertisement;

F.     Using in any manner the term "PROGANIC" or any variation thereof, in connection with any advertisement or promotion; and

G.     Committing any other act or making any other statement which infringes Plaintiff's trademarks or service marks or constitutes an act of trademark or service mark infringement, contributory infringement, trademark dilution, or unfair competition under federal common law or Minnesota state law.

3.     Requiring Defendant to deliver up, or cause to be delivered up, for destruction all labels, sign, prints, packages, wrappers, receptacles, advertisements, and all other materials in the possession or control of Defendant that infringe Plaintiff's PYGANIC® marks;

4.     Requiring Defendant to account for and pay over to Plaintiff the Defendant's profits and all damages sustained by Plaintiff;

5.     Finding that this is an exceptional case under 15 U.S.C. § 1117(a);

6.     Awarding Plaintiff its attorneys' fees, treble damages, costs, and expenses pursuant to 15 U.S.C. §§ 1114 and 1117; and

7.     Awarding Plaintiff such other relief as the Court may deem just and equitable.

Respectfully submitted,

WINTHROP & WEINSTINE, P.A.

Dated: October 29, 2010

Peter J. Gleekel, #149834
pgleekel@winthrop.com
Stephen R. Baird, # 214024
sbaird@winthrop.com
Bradley J. Walz, #339891
bwalz@winthrop.com

3500 Capella Tower
225 South Sixth Street
Minneapolis, MN 55402
Telephone:  612-604-6400
Facsimile:  612-604-6800

COUNSEL FOR PLAINTIFF
MCLAUGHLIN GORMLEY KING
COMPANY

5580338v1